BROWNE GEORGE ROSS LLP
Guy C. Nicholson (State Bar No. 106133)
  gnicholson@bgrfirm.com
Lori Sambol Brody (State Bar No. 150545)
  lbrody@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile:  (310) 275-5697

Attorneys for Plaintiff Mehrdad Taghdiri

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHRDAD TAGHDIRI, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>MYKALAI KONTILAI, an individual; and COLLECTORS COFFEE, INC., a Nevada corporation,<br><br>  Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**(1) Securities Fraud [Rule 10b-5],**<br>**(2) Securities Fraud [Cal. Corp. Code §§ 25401/25501**<br>**(3) Breach of Fiduciary Duty,**<br>**(4) Intentional Misrepresentation and Concealment,**<br>**(5) Negligent Misrepresentation, and**<br>**(6) Unjust Enrichment.**<br><br>**JURY DEMAND** |

1061422.1

Plaintiff Mehrdad Taghdiri ("Plaintiff") alleges:

## THE PARTIES

1. Plaintiff is a citizen of the State of California and, at all times relevant to the events alleged herein, a resident of the County of Los Angeles.

2. Plaintiff is informed and believes, and thereon alleges, that Defendant Mykalai Kontilai ("MK") is a citizen and resident of either Las Vegas, Nevada or New York, New York.

3. Defendant Collectors Coffee, Inc., is a Nevada corporation which maintains its principal place of business in Clark County, Nevada. Defendant MK is the President, Chief Executive Officer, board chairman, and controlling stockholder of CCI.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this dispute pursuant to section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 CFR § 240.10b-5], and sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 77u (e), 78u, and 78a (a)]. Defendants acting directly and in concert with one another, have made use of the means of interstate commerce in connection with the fraudulent sale of the securities described below in paragraphs 5 and 6 of this Complaint. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, exclusive of pre-judgment interest and costs.

## ALLEGATIONS COMMON TO EACH CLAIM FOR RELIEF

5. According to Defendants, CCI's business was, *inter alia*, to act as an intermediary for the sale of valuable collectibles and memorabilia of every variety, such as rare sports collectibles including, in particular, the original contracts signed by Jackie Robinson pursuant to which he broke the color barrier to become the first African American major league baseball player. In return for serving as an

intermediary, CCI would be entitled to receive substantial commission payments. What supposedly made CCI a particularly attractive investment opportunity, again according to Defendants, was the represented fact that CCI had in place the "first ever" Authenticity Insurance Policy in the collectibles industry to protect and reassure buyers that the collectibles offered for sale were in fact genuine.  In its written Business Plan, delivered to Plaintiff by electronic mail in California, Defendants represented, *inter alia*, that CCI has on-hand a "massive" inventory of exclusive collectibles and memorabilia "under contract" which had been "pre-insured" and "pre authenticated."

6.	On April 7, 2016, Plaintiff purchased 125,000 shares of non-voting CCI Series A preferred stock for the sum of $250,000, in reasonable reliance upon various representations made by MK, on his own behalf, although he was not a licensed broker-dealer in any jurisdiction, and as the authorized agent of the issuer CCI, including the representations set forth in paragraph 5, and (i) that CCI was the sole owner of, and its inventory included, Jackie Robinson contracts with an appraised value of $36 million, (ii) that CCI had entered into Authenticity Insurance Policies with so-called "partner insurance companies" such as Lloyds of London, AIG, Liberty Mutual, Chubb, C.V. Starr, Navigators and XL, (iii) that the insurance policies had been invented by MK, were exclusive to CCI, and would serve to guarantee the authenticity of collectibles purchased through CCI thereby giving the company an overwhelming competitive advantage in the marketplace, (iv) that CCI had entered into a "partnership and contract" with AON Corporation pursuant to which a division of AON (Aon Affinity) would manage and oversee all insurance related customer service and claims processing relating to the "Authenticity Insurance Policy Program," (v) that CCI was party to numerous Master Dealer Agreements pursuant to which CCI was given virtually exclusive access to an inventory of collectibles worth literally billions of dollars, (vi) that the stock was being sold pursuant to an exemption from registration under Federal law and was

being registered for sale in accordance with California law, (vii) that CCI had $10 million in cash on hand and was financially strong, (viii) that the CCI website, through which transactions would be processed, was ready to go live, (ix) that MK had not taken a salary from CCI and had personally invested millions of dollars into the company, (x) that in 2016, CCI would be airing a Collectors Café TV Series – a daily television program hosted by radio and television personality Larry King and his wife, Shawn King, (xi) that a so-called Collectors Café Bloggers Network had been established, was ready to launch, and designed to promote CCI's business – "*imagine thousands of bloggers promoting and educating their followers on the world of collectibles, this will be happening on a daily basis around the world,*" and (xi) that CCI has "no existing debt of any kind."  The foregoing representations were made by MK beginning in early February 2016 through early April 2016, in person and via telephone at Beverly Hills, California, and Hollywood, California, and via a Confidential Private Placement Memorandum (as amended) and Business Plan sent by Defendants, via the internet, to Plaintiff at Beverly Hills, California.

7.     To lend further credence respecting the desirably of an investment in CCI, beginning in or about February 2016, at Hollywood, California, MK invited Plaintiff to attend, and Plaintiff did attend, the taping of a video presentation hosted by Larry King promoting CCI's business.  Mr. King's enthusiastic participation in this event, fortified Defendant's representations in the aforementioned Private Placement Memorandum, as amended, that Mr. King was an "equity" partner in the business who had entered into a "Partnership, Brand Ambassadorship & Host Agreement" with CCI.

8.     The representations of material fact set forth in paragraphs 5 and 6 were false and were known by Defendants to have been false at the time they were made.  The true facts intentionally concealed from Plaintiff include: (i) on information and belief, the so-called Authenticity Insurance Policies did not exist or either would not have covered a buyer as an insured, as distinguished from CCI,

and/or would not have provided adequate insurance coverage – when pressed in May 2018 to simply provide a copy of such an insurance policy, Defendants by their silence refused to do so, (ii) Defendants had no reasonable grounds to believe that the Jackie Robinson contracts could be sold for an amount anywhere close to $36 million, (iv) CCI was not the owner of the Jackie Robinson contracts, instead, CCI held at best a minority interest in the sale proceeds thereof, (v) in May 2018, Plaintiff learned for the first time that upon a sale of the Jackie Robinson contracts, ten percent (10%) had been pledged to the Jackie Robinson Foundation, ten percent (10%) would be paid to Larry King directly, forty percent (40%) would be payable to a previously undisclosed investor group headed by an individual known as Steven Jackson, with the remaining forty percent (40%) split between MK personally and CCI, (vi) on or about September 8, 2017, Defendants notified investors that CCI had entered into an agreement with the Jackie Robinson Foundation to auction the Jackie Robinson contracts thereby inadvertently revealing that CCI either was not the sole owner of the contracts or was not in control over whether they could be sold without the permission of others, (vii) Plaintiff discovered in May 2018, that CCI had disseminated private placement documents to potential investors that were factually inconsistent with one another – for example, although the private placement documents provided by Defendants to Plaintiff flatly stated that CCI had no debt of any kind, a private placement memorandum provided to another investor advised that the CCI was indebted to MK on unpaid promissory notes totaling $600,000.00, (viii) in or about September 2016, a former employee of CCI revealed to another CCI investor that there were never any binding Master Dealer Agreements in place nor did CCI have exclusive, or any, access to an inventory of collectibles worth literally billions of dollars – on information and belief, as of late 2016, CCI's inventory had a value of less than $1 million and nothing had been sold, (ix) no attempt was made to qualify CCI's stock for sale in accordance with California securities laws or to secure an exemption from registration under Federal law, (x)

instead of using money invested by Plaintiff, and other investors, to fund legitimate company expenses, CCI used those funds to pay MK's day-to-day living expenses and lavish lifestyle, and (xi) the CCI website was not ready to go-live at any time during 2016 or 2017, nor is it operational today, nor was there any reasonable prospect that a television program hosted by Larry King would come to fruition.

9. On information and belief, CCI was not and never has been financially sound and was basically a front or façade used by MK to raise money to support his lifestyle and ego. Plaintiff learned in May 2018, from public filings, that in 2016 (i) David Chapman, CCI's Vice President of Investor Relations, disclosed to other investors that CCI had lost many of its key employees as a result of the company's non-payment or late payment of wages and unspecified "integrity" issues involving MK, (ii) Cori Dyer, CCI's former marketing and media consultant, confirmed that bloggers had not been "signed up" to promote CCI, and (iii) Ms. Dyer and Chris Shutte, formerly in charge of Dealer Relations for CCI, confirmed that there were no "dealers" signed up to provide inventory to CCI – much less pre-insured or pre-authenticated inventory.

10. Had Plaintiff been aware of the true facts as set forth above prior to investing in CCI, he would not have purchased CCI stock and would not have been damaged as alleged herein below. As set forth herein above, Plaintiff purchased CCI stock in April 2016, and did not suspect or become aware of Defendants' misconduct until the later part of 2017.

## FIRST CLAIM FOR RELIEF

**[Against all Defendants – Securities Fraud in Violation of § 10(b) of the Exchange Act and Rule 10b-5]**

11. Plaintiff realleges and incorporates by reference paragraphs 1 through 10 above as though fully set forth at this point.

12. As a result of the intentional misrepresentations and concealment of material facts as alleged herein above, Defendants acting in concert with one

another, have used the means or instruments of interstate commerce, including the internet, in connection with and to induce the sale of CCI securities in California to Plaintiff and, in connection therewith, as alleged in paragraphs 5 and 6 of this Complaint, have knowingly or recklessly employed a scheme or artifice to defraud, and have made untrue statements of material facts, or have omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.  Having engaged in such conduct, Defendants have acted intentionally and in reckless disregard for the truth in order to illegally induce Plaintiff to purchase CCI stock.

13. Plaintiff has therefore been damaged as a result of Defendants' misconduct in the sum of no less than $250,000, exclusive of pre-judgment interest thereon.  Plaintiff's CCI stock was, and remains, valueless.

### SECOND CLAIM FOR RELIEF

**[Against all Defendants – Securities Fraud under California Law – Corp. Code § 25401)**

14. Plaintiff realleges and incorporates by reference paragraphs 1 through 12 above as though fully set forth at this point.

15. By reason of the acts and omissions alleged above in paragraphs 5 and 6 of this Complaint, Defendants have violated section 25401 of the California Corporations Code.  By this Complaint, Plaintiff offers to rescind the transaction pursuant to which he acquired the CCI stock and to return the stock to CCI in exchange for the purchase price of $250,000 and interest thereon from the purchase date. In the alternative, given that the CCI stock is valueless, Plaintiff is entitled to recover damages from Defendants in the sum of $250,000, plus prejudgment interest at the legal rate.

/ / /

/ / /

/ / /

## THIRD CLAIM FOR RELIEF

**[Against all Defendants – Intentional Misrepresentation and Concealment of Material Facts]**

16.  Plaintiff realleges and incorporates by reference paragraphs 1 through 12 above as though fully set forth at this point.

17.  As a result of the intentional misrepresentations and concealments of material fact alleged herein above, Defendants have defrauded Plaintiff who is therefore entitled to recover damages of no less than $250,000, exclusive of prejudgment interest at the legal rate.

18.  The acts and wrongs alleged herein were done by Defendants with the intent to defraud Plaintiff, to cause Plaintiff to pay money to Defendants under false pretenses and in conscious disregard for Plaintiff's rights.  Defendants have therefore acted fraudulently and with oppression and malice toward Plaintiff who, in addition to his actual damages, is entitled to recover punitive damages in an amount according to proof sufficient to punish Defendants in light of their financial condition.

## FOURTH CLAIM FOR RELIEF

**[Against all Defendants – Negligent Misrepresentation]**

19.  Plaintiff realleges and incorporates by reference paragraphs 1 through 12, and 17 above as though fully set forth at this point.

20.  At the time Defendants made the misrepresentations alleged in paragraphs 5 and 6 of this Complaint, they had no reasonable grounds for believing them to be true and no reasonable grounds for believing that CCI would be able to honor its promises.

21.  As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has been damaged as alleged in paragraph 17 above.

/ / /

/ / /

1061422.1                                      -7-

COMPLAINT FOR SECURITIES FRAUD, ETC.

# FIFTH CLAIM FOR RELIEF

## [Against all Defendants – Breach of Fiduciary Duty]

22.  Plaintiff realleges and incorporates by reference paragraphs 1 through 12 above as though fully set forth at this point.

23.  In light of Plaintiff's status as a shareholder of CCI, Defendants owed a fiduciary duty to Plaintiff to be truthful and forthcoming as to all matters pertaining to CCI's business.  Such fiduciary duties include the affirmative obligation to correct any prior misstatement of fact communicated to Plaintiff in connection with his purchase of CCI stock.

24.  Defendants breached their fiduciary duties by (i) misrepresenting and concealing the material facts alleged in paragraphs 5 and 6 of this Complaint, (ii) failing to inform Plaintiff of the true facts subsequent to his investment, (iii) failing to offer to rescind Plaintiff's purchase of CCI stock, (iv) refusing to provide Plaintiff with financial information concerning CCI's business, (v) intentionally misusing or absconding with the funds invested by Plaintiff, and (vi) repeatedly offering to sell Plaintiff additional CCI stock based upon the same misrepresentations alleged herein above for the express purpose of causing Plaintiff to sustain further damages or, at the very least, to conceal their prior misconduct.

25.  The acts and wrongs alleged herein were done by Defendants with the intent to defraud Plaintiff, to cause Plaintiff to pay money to Defendants under false pretenses in conscious disregard for Plaintiff's rights.  Defendants have therefore breached their fiduciary duties toward Plaintiff and have acted with fraud, oppression and malice toward Plaintiff who, in addition to his actual damages, is entitled to recover punitive damages in an amount according to proof sufficient to punish Defendants in light of their financial condition.

/ / /

/ / /

/ / /

## SIXTH CLAIM FOR RELIEF

**[Against All Defendants – Unjust Enrichment]**

26. Plaintiff realleges and incorporates by reference paragraphs 1 through 12, 15 and 24 above, as though fully set forth at this point.

27. As a direct and proximate result of the wrongdoing alleged in paragraphs 5 and 6 of this Complaint, and Defendants' intentional mismanagement, and/or reckless or grossly negligent mismanagement of CCI, Defendants have been unjustly enriched at Plaintiff's expense thereby entitling Plaintiff to restitution in the sum of no less than $250,000, plus prejudgment interest thereon at the legal rate.

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and against both Defendants, jointly and severally, as follows:

1. For damages of no less than $250,000, plus prejudgment interest thereon at the legal rate;

2. For punitive damages according to proof;

3. For reasonable attorney's fees, and costs of suit; and

4. For such other and further relief as the Court may deem just and proper.

DATED: June 12, 2018　　　　　　　BROWNE GEORGE ROSS LLP
　　　　　　　　　　　　　　　　　　　Guy C. Nicholson
　　　　　　　　　　　　　　　　　　　Lori Sambol Brody


　　　　　　　　　　　　　　　　By:　　/s/ Guy C. Nicholson
　　　　　　　　　　　　　　　　　　　Guy C. Nicholson
　　　　　　　　　　　　　　　　　Attorneys for Plaintiff Mehrdad Taghdiri

1061422.1

-9-

COMPLAINT FOR SECURITIES FRAUD, ETC.

# JURY DEMAND

Plaintiff hereby demands a jury trial.

DATED: June 12, 2018         BROWNE GEORGE ROSS LLP
                             Guy C. Nicholson
                             Lori Sambol Brody


                      By:    /s/ Guy C. Nicholson
                             Guy C. Nicholson
                      Attorneys for Plaintiff Mehrdad Taghdiri